DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA C. YOUNG, | ) | |
| | ) | CASE NO. 3:03CV7490 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| THE CITY OF SANDUSKY, ET AL., | ) | (Resolving Doc. No. 83 and 87) |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## I. **Introduction**

Before the Court are Defendant James Gibson d/b/a Jim's Auto Sales's Motion for Summary Judgment (Doc. No. 83) and Defendants Robert S. Jackson and the City of Sandusky's Motion for Summary Judgment (Doc. No. 87), which have been fully briefed (Doc. Nos. 92, 93 and 94).

In August 2001, Jackson, a code compliance officer for the City of Sandusky, determined that a 1964 Ford Fairlane located at 3009 W. Monroe St. was in violation of Sandusky City Code Chapter 531, a public nuisance ordinance pertaining to unlicensed and junk motor vehicles. Jackson entered onto the property and placed a bright orange violation sticker on the vehicle, which declared that the vehicle needed to be moved or obtain current license plates to prevent it from being towed. The owner of the vehicle, Plaintiff Joshua C. Young, read the warning. Young, however, chose not to obtain current plates for the vehicle or to remove the vehicle.

Jackson made two additional visits to inspect the vehicle's condition and found that the condition had not been remedied. After a third inspection, Jackson issued a tow order to Gibson and

(3:03CV7490)

he towed the vehicle to his business facilities.

In September 2001, Young went to Gibson and requested to view the condition of his vehicle. Gibson refused to give Young access to the vehicle because he would not pay the towing costs and storage fees. The vehicle remained in Gibson's possession. In late July or early August 2003, Gibson subsequently demolished the vehicle.

On August 21, 2003, Young filed the present action setting forth claims of conversion; violations of 42 U.S.C. § 1983 arising from alleged violations of his Fourth, Fifth, and Fourteenth Amendments rights; and spoliation of evidence. Young also seeks a declaration that Chapter 531 is unconstitutionally void-for-vagueness and unconstitutional for failing to provide sufficient procedural due process. Defendants Gibson, Jackson, and the City have moved for summary judgment on these issues.

The Court grants summary judgment in favor of Defendants Gibson, Jackson, and the City of Sandusky on Young's conversion and spoliation of evidence claims because he has failed to establish the prima facie elements for these claims. The Court also finds that summary judgment is appropriate on Young's claim that Chapter 531 is unconstitutionally void-for-vagueness. Defendants motion for summary judgment is denied, however, on both Young's § 1983 claims and his claim that Chapter 531 is unconstitutional for failing to provide sufficient procedural due process. Therefore, Defendants' motions for summary judgment are GRANTED in part and DENIED in part. Furthermore, the Court *sua sponte* grants summary judgment on Young's § 1983 claims under the Fifth and Fourteenth Amendments and his claim that Chapter 531 is unconstitutional as applied. The Court's analysis

2

(3:03CV7490)

follows.

## II. **Background**

In August 2001, Jackson, a code compliance officer for the City, observed a 1964 Ford Fairlane at 3009 W. Monroe St. in Sandusky, Ohio.  From the public thoroughfare, Jackson allegedly observed the vehicle in a dilapidated condition, lacking both front and rear bumpers, and without current license plates.  Based of the condition of the vehicle, Jackson determined the vehicle was in violation of Sandusky City Code Chapter 531, which calls for the removal of public nuisance vehicles.  Young, the owner of the vehicle, however, alleges that the vehicle was covered by a tarp at all times and that the condition of the vehicle was not discernable from the public street.

Based on his determination that the vehicle was in violation of Chapter 531, Jackson entered onto the property and placed a bright orange violation sticker on the vehicle, stating that the vehicle either needed to be moved or obtain current license plates to prevent it from being towed.  Young read the violation tag; however, he chose not to undertake the remedies mandated by the violation sticker. Approximately ten days later, Jackson conducted a follow-up inspection of the vehicle and observed that the condition of the vehicle had not changed.  Jackson did note, however, that the vehicle had been partially covered with a tarp.[1]  After the second visit, Jackson did not order the vehicle towed but, instead, returned to the property a third time to determine if the violations had been remedied. Because the violations had not been remedied, Jackson issued a tow order to Jim's Auto Sales to

---

[1]Jackson contends this is the first time that the vehicle was covered by a tarp.

3

(3:03CV7490)

remove the vehicle.  Subsequently, Gibson towed the vehicle and held it at his business facilities.[2]

In September 2001, Young went to Gibson and requested to view the condition of his vehicle.

Gibson, however, refused to give Young access to the vehicle because Young would not pay the

towing costs and storage fees for the vehicle.  Thereafter, Gibson remained in possession of the vehicle

until the middle of 2003.  In late July or early August 2003, Gibson demolished the vehicle,

approximately three weeks before he received notice of the present suit.

### III. <u>Legal Standard</u>

Summary judgment is appropriate where there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When considering a

motion for summary judgment, "the inferences to be drawn from the underlying facts contained in

[affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the

light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading,

but must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty

Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper

summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the

mere pleadings themselves[.]"  <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 324 (1986).  General

---

[2]The parties have not presented exact dates when these events occurred, however, the parties
agree on the general time line.

4

(3:03CV7490)

averments or conclusory allegations of an affidavit do not create specific fact disputes for summary

judgment purposes.  See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).  Nor

may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been

made, which contradicts . . . earlier deposition testimony."  Reid v. Sears Roebuck & Co., 790 F.2d

453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)); but

see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need

not be disregarded if there is "independent evidence in the record to bolster [the] otherwise

questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff.'"  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting

Anderson v. Liberty Lobby, 477 U.S. at 252).

        In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the

need for a trial – whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, 477 U.S. at 250.  Put another way, this Court must determine "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law."  Id. At 251-52.  See also Wexler v. White's Fine

Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can

be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

## IV. Discussion

5

(3:03CV7490)

Defendants Gibson, Jackson, and the City seek summary judgment on all of Young's claims for damages, as well as, his constitutionality claims.  A discussion of the claims follows.

### A. Young's 42 U.S.C. § 1983 Claims

The first group of claims challenged on summary judgment are Young's § 1983 claims.  Section 1983 provides,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983 (2005).  Thus, to make a valid claim under § 1983, two criteria must be established: (1) the plaintiff must establish the denial of a constitutional right; and (2) the plaintiff must establish that the defendant acted under the color of law.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970).

### 1. Whether Gibson was a State Actor

Defendant Gibson asserts that he is not liable for Young's § 1983 claims because his actions were not under the color of law. "A claim may be brought under § 1983 only if the defendant acted under color of state law." Rendell-Baker v. Kohn, 457 U.S. 830, 835 (1982).  Consequently, "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the State?" Id. at 838 (internal quotations omitted)(quoting Lugar v. Edmondson

6

(3:03CV7490)

Oil Co., 457 U.S. 922, 937 (1982)).  Sixth Circuit courts  have applied three tests to determine when

the actions of a private entity are fairly attributable to the state: (1) the public function test; (2) the state

compulsion test; and (3) the symbolic relationship test.  Lansing v. City of Memphis, 202 F.3d 821,

828 (6th Cir. 2000).  In the present case, however, only the public function test is necessary.

   "The public function test requires that the private entity exercise powers which are traditionally

exclusively reserved to the state."  Id. (internal quotations omitted)(quoting Wolotsky v. Huhn, 960

F.2d 1331 (6th Cir. 1992)).  While towing itself is not an inherently public function, when undertaken in

the context of enforcing a criminal ordinance and/or abating a public nuisance at the direction of a

government entity, towing becomes an exercise of powers traditionally reserved exclusively to the state.

Here, Jackson, a Sandusky code compliance officer, directed Gibson to tow the vehicle under a

criminal ordinance to abate a public nuisance.  Thus, Gibson's towing of Young's vehicle was a public

function because he was enforcing a criminal ordinance and abating a public nuisance.  His actions,

therefore, constitute a public function and are fairly attributable to the state.  Consequently, Gibson can

be held liable under § 1983 for the towing of Young's vehicle.

### 2. Young's Fourth Amendment Claim

   Young's first claim under § 1983 alleges a violation of his Fourth Amendment right against

unreasonable search and seizure. What an individual "seeks to preserve as private, even in an area

accessible to the public, may be constitutionally protected."  Katz v. United States, 389 U.S. 347, 351-

52 (1967) (citing Rios v. United States, 364 U.S. 253, (1960); Ex parte Jackson, 96 U.S. 727, 733

(1877)).  This protection, however, does not extend to preclude an officer's observations when passing

7

(3:03CV7490)

by a home on public thoroughfares.  <u>California v. Ciraolo</u>, 476 U.S. 207, 213 (1986).

> "The Fourth Amendment protection of the home has never been extended to require
> law enforcement officers to shield their eyes when passing by a home on public
> thoroughfares. Nor does the mere fact that an individual has taken measures to restrict
> some views of his activities preclude an officer's observations from a public vantage
> point where he has a right to be and which renders the activities clearly visible."

<u>Id.</u>  Thus, the issue is whether the condition of Young's vehicle was discernible from a public

thoroughfare.

Here, Young asserts that his vehicle was placed against a fence on two sides and was covered

with a tarp at all relevant times, making the condition and registration status of the vehicle undetectable

from the public right of way.  Indeed, Young contends that it was not even discernible from the public

right of way that there was, in fact, a vehicle underneath the tarp.  Gibson, Jackson, and the City,

however, contend that the vehicle was not under the tarp on Jackson's first visit and that its condition

was clearly discernible from the public right of way.

This dispute over the visibility and location of Young's vehicle presents a significant factual

dispute in context of Young's § 1983 claim.  Therefore, only once this factual issue has been resolved

can the legitimacy of Young's claim be assessed.  Since genuine issues of material fact exist, summary

judgement is not appropriate.

### 3. Young's Fifth and Fourteenth Amendment Claims

Young also asserts claims under § 1983 for violations of his Fifth and Fourteenth Amendments

rights, contending he was the victim of a property takings without due process of law.  To effectively

assert § 1983 claims based on a lack of procedural due process, a plaintiff may proceed in two ways:

8

(3:03CV7490)

(1) by demonstrating that the property deprivation occurred as a result of an "established state procedure that itself violates due process rights;" or (2) by showing that the deprivation of property was caused by a "random and unauthorized act" and that available state remedies are inadequate.  Macene v. MJW, Inc., 951 F.2d 700, 705 (6th Cir. 1991), cited in Warren v. City of Athens, Ohio, - - - F. 3d. - - -, 2005 WL 1398519 at *9 (6th Cir. 2005).  Plaintiffs utilizing the first method need not demonstrate the inadequacy of state remedies.  Id.  Furthermore, "[w]hen a plaintiff directly challenges established state procedures, a federal court must evaluate the challenged procedures directly to ensure that they comport with due process."  Macene, 951 F.2d at 702.

"Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing."  Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994).  However, "[w]hen the situation . . . makes efforts to provide meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate postdeprivation procedure."  Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)).  Furthermore, in a forfeiture context, "pre-seizure hearings are not constitutionally mandated, as long as interested persons receive notice and a timely post-seizure opportunity to be heard prior to forfeiture."  Ross v. Duggan, 402 F.3d 575, 584 (6th Cir. 2004) (citing United States v. Von Neumann, 474 U.S. 242, 249-50 (1986)).

In Ross, the plaintiffs had their vehicles seized under a nuisance abatement statute.  Id. at 583. While the plaintiffs did not receive a pre-seizure hearing, they were each afforded the opportunity to

9

(3:03CV7490)

request a prompt post-impoundment show-cause hearing to challenge the seizure and pending

forfeiture.  Id.  If the challenge was successful, the vehicle was returned without substantial monetary

penalties.  Id.  The court held that this procedure satisfied procedural due process and Takings Clause

requirements.  Id.

Here, Young was not provided with any hearing process.  Young was given notice of the

pending seizure of his vehicle through the violation sticker that Jackson placed on the vehicle.  Unlike

Ross, however, after the vehicle was seized Young was not afforded the opportunity to request a post-

seizure, pre-forfeiture hearing to challenge the seizure.  Furthermore, Defendants do not argue that

allowing for such a hearing would have been impractical.  Because procedural due process requires

some type of hearing before depriving Young of his property, summary judgment is not appropriate

against Young on his procedural due process § 1983 claim.  Moreover, the Defendants put forth no

evidence that there was not a denial of procedural due process.  Therefore, the Court *sua sponte*

grants summary judgment for Young on his procedural due process § 1983 claim.

## B. Constitutionality Claims

Defendants next challenge Young's claims that Chapter 531 is unconstitutional.  Young makes

two arguments against the constitutionality of Chapter 531.  First, Young contends that Chapter 531 is

unconstitutionally void-for-vagueness because it does not sufficiently allow a person of ordinary

intelligence to know what conduct is prohibited and because it allows arbitrary enforcement.  Secondly,

Young contends that Chapter 531 is unconstitutional as applied for lack of procedural due process.

## 1. Void-for-Vagueness

10

(3:03CV7490)

In the present case, Young contends that Chapter 531 is unconstitutionally vague because the language of the criminal ordinance does not allow a person of ordinary intelligence to understand the law and, also, allows for arbitrary enforcement of the ordinance. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  "Vagueness may invalidate a criminal ordinance if it either (1) fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits or (2) authorizes or encourages arbitrary and discriminatory enforcement."  United States v. Caseer, 399 F.3d 828, 836 (6th Cir. 2005)(internal quotations omitted) (quoting United States v. Bowker, 372 F.3d 365, 380 (6th Cir. 2004)).  "[W]hen [courts] evaluate a provision . . . that regulates the conduct of the public at large and not a particular industry or subgroup, we do not impute specialized knowledge to the person of ordinary intelligence by whom we judge the statute's vagueness."  Id. at 837.

The first section of Chapter 531 challenged by Young is § 531.02 Public Nuisance.  This chapter provides,

> 531.02 PUBLIC NUISANCE.
> (a) *Each of the following shall be deemed to constitute a public nuisance*:
> > (1) The accumulation, storage and/or disposition of garbage, refuse, hazardous waste, infectious wastes and/or solid wastes in any manner other than as provided and allowed by these Codified Ordinances and/or any other applicable state or local law or regulation in a manner consistent with and permitted by the same;
> > (2) The accumulation and/or storage of junk at any place except in a wholly enclosed building or structure, or in a junkyard permitted by these Codified Ordinances and/or applicable state or local law or regulation in a manner consistent with and permitted by the same;

11

(3:03CV7490)

> (3) *The parking, storing or leaving, or permitting the parking, storing or leaving of any wrecked and/or inoperable motor vehicle*, trailer, recreational vehicle or watercraft of any kind, or any motor vehicle, trailer, recreational vehicle or watercraft *upon which evidence of current and effective registration as required by law is not displayed*, *upon any private property within the City* except that any such motor vehicle, trailer, recreational vehicle or watercraft may be parked, stored or left upon private property for a single period of time not to exceed five days in total duration;
>
> (4) The accumulation and/or storage of motor vehicle parts upon private property except in a wholly enclosed building or structure, or in a junkyard permitted by these Codified Ordinances and/or applicable state or local regulations, in a manner consistent with, and permitted by the same;
>
> (5) The use or occupation of any private land, real estate, house, building, residence, apartment or structure in any manner which is in violation of Ohio R.C. 2925.13, Section 513.07 and/or any other provision of this chapter, Ohio R.C. 4301.73, 4301.74 and/or 4399.09 and Ohio R.C. 2907.37 or any successor thereof or amendment thereto;
>
> (6) Open burning and/or open dumping.

(Emphasis added).

Young argues that this provision is unconstitutionally vague because it fails to define what a public nuisance is. This provision, however, states six conditions which "shall be deemed to constitute a public nuisance." Certainly, a person of reasonable intelligence would be able to read this section and determine that these activities constitute a public nuisance.

Young also argues that § 531.02 "fails to delineate how variously categorized motor vehicles are deemed public nuisances rather than merely aesthetically unappealing." Section 531.02(c), however, defines as a public nuisance "[t]he parking, storing or leaving, or permitting the parking, storing or leaving of any wrecked and/or inoperable motor vehicle . . . upon which evidence of current

12

(3:03CV7490)

and effective registration as required by law is not displayed, upon any private property."  Thus, a

vehicle is deemed a public nuisance if it meets three criteria: (1) it is wrecked or inoperable; (2)

evidence of current and effective registration as required by law is not displayed on the vehicle; and (3)

it is parked, stored, or left on private property.  A "wrecked motor vehicle" is defined in § 531.01(t) as

"any motor vehicle which is wrecked, dismantled and/or partially dismantled whereby it is incapable of

operation by its own power, from which the wheels, engine, transmission and/or any other substantial

part thereof has been removed."  Additionally, an "inoperable motor vehicle" is defined in § 531.01(e)

as

> a motor vehicle the condition of which is wrecked, dismantled and/or partially
> dismantled whereby it is incapable of operation and/or use under its own power; from
> which the wheels, engine, transmission and/or any other substantial part thereof has
> been removed; and/or upon which there is not affixed valid evidence of current
> registration as required by applicable laws of the State;

A person of reasonable intelligence after reading these provisions would understand which motor

vehicles constitute a public nuisance.  Young's contention that § 531.02 fails to sufficiently define a

public nuisance, therefore, is clearly without merit because the ordinance expressly defines what

conduct is going to be considered a public nuisance.

Young also challenges the constitutionality of §§ 531.08 and 531.05(b), which provide for the

abatement of public nuisances.  He contends that these sections allow for the imposition of arbitrary

civil fees.  Section 531.05(b) is the general abatement provision for the entire chapter, while § 531.08

is limited to the abatement of nuisance weeds.  Section 531.08, however, is completely derived from §

531.05(b) and, therefore, this Court need only analyze § 531.05(b).  Section 531.05(b) provides that

13

(3:03CV7490)

if, after written notice is provided, the nuisance is not abated within the prescribed time,

> the City will abate the same by its own action or cause its abatement, and charge the reasonable costs thereof against the premises or property involved which shall then become a lien against such premises, and shall set forth the rate or rates at which such abatement shall be charged and assessed. . . and the reasonable cost thereof to be charged and assessed at the rate or rates set out in the notice described hereinabove together with an additional charge and penalty of fifty dollars ($50.00), shall be reported by the City Manager to the Director of Finance who may make such efforts as he deems appropriate in his attempt to collect the same, and who thereafter shall certify the same to the Auditor of Erie County, to be placed upon the tax duplicate of the County as a charge and lien against the premises involved which shall be collected as real estate taxes are collected.

Again, this section plainly sets forth the framework for the City of Sandusky's nuisance abatement procedure and is sufficient to allow a person of ordinary intelligence to know what the enforcement procedure will be.  The ordinance clearly states that notice will be given to abate the nuisance and that if the nuisance is not abated within the requisite time period, the City will abate the nuisance and assess the reasonable costs of the abatement.  Young's contention that § 531.05(b) language allows for arbitrary enforcement and assessment of fees is unpersuasive because the section clearly sets forth the notice and abatement process and states that if the nuisance is not abated, the reasonable costs will be charged.  Thus, the ordinance is sufficient to provide a person of ordinary intelligence the knowledge of the prohibited conduct and abatement procedures.

The final section challenged by Young is § 531.15(b)(2)(B), which establishes the criteria for determining the existence of an "unlicensed and junk motor vehicle" under § 531.15.  Section 531.15(b) provides,

> (b)    <u>Storage on Private Property.</u>

14

(3:03CV7490)

> (1) No person in charge or in control of any property within the City, whether as owner, tenant, occupant, lessee or otherwise, shall park, store, leave, or permit the parking or storing of any motor vehicle or any vehicle in a wrecked, junked, partially dismantled, unlicenced, inoperative or abandoned condition, whether attended or not, for a period in excess of five calendar days upon any private property in the City, unless the same is completely enclosed within a building, or unless it is in connection with a business enterprise operated in a lawful place and manner and licensed as such, when necessary to the operation of such business enterprise or is a collector's vehicle pursuant to Ohio R.C. 4501.01(F).
>
> (2) For the purpose of this section, a motor vehicle shall be deemed to be in a wrecked or junk condition if any of the following apply:
>
>   A. The vehicle is extremely damaged including but not limited to any of the following: missing wheels, tires, motors or transmissions.
>
>   B. The vehicle is apparently inoperable.
>
>   C. The vehicle is unlicenced.
>
>   D. The motor vehicle is inoperable, junk or wrecked as defined in Section 531.01.

Young contends that this section is unconstitutionally vague because the "apparently inoperable" language in the definition of what constitutes an "unlicensed and junk motor vehicle" allows for arbitrary enforcement.

As noted above, an "inoperable motor vehicle" is defined in § 531.01(d) as

> a motor vehicle the condition of which is wrecked, dismantled and/or partially dismantled whereby it is incapable of operation and/or use under its own power; from which the wheels, engine, transmission and/or any other substantial parts thereof have been removed; and/or upon which there is not affixed valid evidence of current registration as required by applicable laws of the State.

Further, Webster's Third International Dictionary defines "apparently" as "in an apparent manner: seemingly, evidently." Thus, a vehicle is "apparently inoperable" if it seemingly or evidently is wrecked,

15

(3:03CV7490)

dismantled and/or partially dismantled whereby it is incapable of operation and/or use under its own

power.  Based on this specific definition of an "inoperable motor vehicle," Young's contention that the

"apparently inoperable" provision allows for arbitrary enforcement is without merit.  The language of the

ordinance allows a person of ordinary intelligence to know when a vehicle will be in violation of the

ordinance.  Therefore, since all of the sections challenged by Young withstand the criteria for facial

constitutionality, summary judgement is appropriate on all of Young's void-for-vagueness claims.[3]

## 2.  Unconstitutional For Lack of Due Process

Young's second constitutional challenge to Chapter 531 is that it is unconstitutional as applied

because it fails to provide sufficient due process.  Specifically, Young challenges the constitutionality of

Chapter 531 for lack of sufficient procedural due process because he was not afforded any form of

hearing prior to the seizure of his vehicle.  "Traditionally, a plaintiff's burden in an as-applied challenge

is different from that in a facial challenge.  In an as-applied challenge, 'the plaintiff contends that

application of the statute in the particular context in which he has acted, or in which he proposes to act,

would be unconstitutional.'"  Ross, 402 F.3d at 583 (quoting Women's Med. Prof'l Corp., 130 F.3d

at 193 (6th Cir. 1997)).  "The practical effect of holding a statute unconstitutional as applied is to

---

[3]Additionally, Young argues that § 531.08 Determination of Public Nuisance is vague because
it fails to define who may determine whether a public nuisance exists and what a public nuisance is.
Section 531.08 clearly provides that "the City Manager, the Department of Health of jurisdiction within
the City and/or any individual or entity designated by the City Manager" will determine whether a public
nuisance exists.  Furthermore, § 531.08 only applies to public nuisances "as set forth in Section
531.07," which delineates specific height, length, and other restrictions regarding weeds, underbrush,
grass, trees, and shrubbery.  Thus, a person of reasonable intelligence would clearly be able to
understand what conditions § 531.08 prohibits, and, therefore, this argument also fails.

16

(3:03CV7490)

prevent its future application in a similar context, but not to render it utterly inoperative." Ada v. Guam Soc'y of Obstetricians & Gynecologists, 506 U.S. 1011 (1992) (Scalia, J., dissenting).

As noted above, a necessary principle of due process is the opportunity to have a hearing concerning the deprivation of property.  Here, Young was not provided with any form of hearing to appeal the seizure of his vehicle and attempt to prove that his vehicle was not in violation of the ordinance.  While Chapter 531 provides no provision for the opportunity to have a hearing to appeal the seizure of the nuisance property, it does not prohibit the City from providing such a hearing.  Thus, while Chapter 531 is not facially unconstitutional, Defendants are not entitled to summary judgment on Chapter 531's constitutionality as applied.  Furthermore, because Defendants put forth no evidence that Young  was offered any form of appeals hearing by the City, the Court *sua sponte* grants summary judgment on Young's claim that Chapter 531 is unconstitutional as applied.

## C. Conversion

Defendants Gibson, Jackson, and the City also challenge on summary judgment Young's claim of conversion of property.  Conversion is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." Balt. & Ohio R.R. Co. v. O'Donnell, 49 Ohio St. 489, 497 (1892).  To establish a claim of conversion, Young must establish three elements: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.  ATD Corp. v. DaimlerChrysler Corp., 261 F. Supp. 2d 887, 898 (E.D. Mich. 2003) (citing 18 Am. Jur. 2d Conversion, § 2 (1985)).  Furthermore, "the owner

17

(3:03CV7490)

must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." Tabar v. Charlie's Towing Serv., 97 Ohio App. 3d 423, 427-428 (Ohio Ct. App. 1994) (citing Ohio Tel. Equipment & Sales, Inc. v. Hadler Realty Co., 24 Ohio App. 3d 91, 94 (Ohio Court App. 1985)).

Here, Young's vehicle was seized in accordance with City Code Chapter 513.13(e). Sandusky City Code Chapter 531.13(e)  states in pertinent part,

> if the registered owner of any motor vehicle which is in violation of this section, or the owner or person in lawful possession or control of the private property upon which the same is located, fails, neglects or refuses to remove or house such abandoned, wrecked, junked, partially dismantled or inoperative motor vehicle in accordance with the notice given . . .the Code Compliance Officer and/or the Chief of Police may remove and dispose of such motor vehicle.

Since, the seizure of the vehicle was statutorily mandated in Chapter 531.13(e), the seizure cannot be deemed wrongful as a matter of law.  See Johnson v. Ohio State Highway Patrol, 123 Ohio App.3d 307 (Ohio Ct. App. 1998)(where seizure of a vehicle is statutorily mandated, the seizure is not a wrongful exercise of dominion in a conversion claim).  Therefore, since Young cannot establish that the seizure of his vehicle was wrongful, Gibson, Jackson, and the City are entitled to summary judgment on his conversion claim.

### D. Spoliation of Evidence

The final claim challenged on summary judgment is Young's claim of spoliation of evidence. There are five criteria for spoliation of evidence claims: (1) pending or probable litigation, (2)

18

(3:03CV7490)

knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of

evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and

(5) damages.  <u>Smith v. Howard Johnson Co., Inc.</u>, 67 Ohio St. 3d 28, 29 (1993).

Here, Young has not sufficiently established the necessary criteria to make a prima facie case.

Specifically, Young has presented no evidence that Gibson knew that this matter existed or was

probable.  Furthermore, Young has presented no evidence to establish that Defendant Gibson willfully

destroyed his seized vehicle for the purpose of disrupting his case.  In fact, the only evidence that has

been presented on this issue is that Gibson destroyed the vehicle approximately three weeks prior to

learning of the present suit.  Therefore, since Young has not presented any evidence to establish either

the second or third prima facie elements of a claim of spoliation of evidence, summary judgment is

granted against Young's spoliation of evidence claim.

## V. Conclusion

For the foregoing reasons, Defendant Jim Gibson and Defendants Robert Jackson and the City

of Sandusky's motions for summary judgment are GRANTED on Plaintiff Joshua Young's claims of

conversion and spoliation of evidence, as well as his claim that Chapter 531 is facially unconstitutional.

Defendants' motions are DENIED on Young's § 1983 claims and his claim that Chapter 531 is

unconstitutional as applied.  Furthermore, the Court *sua sponte* GRANTS Plaintiff Joshua Young

summary judgment on his § 1983 claim that his Fifth and Fourteenth Amendment rights were violated

and his claim that Chapter 531 is unconstitutional as applied.

The Court will proceed to trial on the issues of whether Young's Fourth Amendment rights

19

(3:03CV7490)

were violated and what damages he suffered as a result of the violation of his constitutional rights.   The

valuation of damages in this case is dependent upon whether there was a Fourth Amendment violation,

as that determination affects whether the vehicle is valued at the time of seizure or at the time of

destruction.  Also relevant to the damages issue in this case is whether the Defendants are entitled to a

set off for any legitimate claims for towing and storage costs.

### VI. Status Conference

The Court will conduct a Status Conference in this matter on Friday, July 1, 2005, at 2:30 p.m.,

in Chambers 402 United States Courthouse and Federal Building, 2 South Main Street, Akron, Ohio

44308.[4]  At the Conference, the Court will discuss trial in this matter and alternative methods of dispute

resolution.

IT IS SO ORDERED.

 June 23, 2005                                          */s/ David D. Dowd, Jr.*  
                Date                                          David D. Dowd, Jr.  
                                                             U.S. District Judge

---

[4]Plaintiff Joshua Young and a representative of the City, either the law director or the mayor, shall attend the Conference.  Defendants James Gibson and Robert Jackson and representatives from any insurance carriers involved in this matter may attend the Conference if they wish.

20